UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RANDALL LEFEVRE #289197,

                     Plaintiff,                              Case No. 2:06-cv-152

v.                                               HON. ROBERT HOLMES BELL

WILLIAM LUETZOW, et al.,

                     Defendants.

_____/

### REPORT AND RECOMMENDATION

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, I recommend that Plaintiff's complaint be dismissed for failure to state a claim.

## Discussion

I.    Factual allegations

Plaintiff Randall Lefevre, an inmate at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Deputy Warden William Luetzow, Unknown Parties named as all employees at AMF, Resident Unit Officer Unknown Johnson, Resident Unit Officer Unknown Snow, Sergeant Unknown Green, Captain Unknown Cambell, and Case Manager Tonya Dostler-Etelamaki.  Plaintiff alleges in his complaint that on October 3, 2005, while in segregation, Plaintiff was considered for release to the general population by Defendants Luetzow and Dostler-Etelamaki.  Plaintiff then admitted that he had intentionally smashed his own typewriter in order to be placed in segregation on November 27, 2004. Immediately thereafter, the Security Classification Committee (SCC) recommended releasing Plaintiff to the general population.  Plaintiff then gave Defendant Johnson a protection kite which stated that he was afraid for his life and requested a protection hearing.  Defendants Johnson and Snow came to Plaintiff's cell later and told him that Defendant Luetzow said that Plaintiff could not request a protection hearing while he was confined to the segregation unit.  Defendant Johnson told Plaintiff that Defendant Luetzow had instructed him to write a "disobeying a direct order" ticket on Plaintiff if he refused to be released to the general population.  Defendant Johnson encouraged Plaintiff to just take the ticket so that he could stay in segregation.  Plaintiff then asked Defendant Johnson to return his protection kite with Defendant Luetzow's written response on it, but Defendant Johnson refused.  Plaintiff was then released into the general population.

Once in the general population, Plaintiff denied himself all out of cell activities, such as outside exercise, showers, and dining hall services.  On October 4, 2005, Plaintiff provided

Defendant Green with an official protection form indicating that he was afraid for his life, and requesting that he be placed in temporary segregation pending an SCC protection hearing.

Plaintiff claims that the protection form set forth numerous facts which were easily verifiable and sufficient to alert staff that a serious, life threatening situation existed. The protection form stated that Plaintiff had been accused of killing an influential gang member in society and wounding another gang member, who is currently incarcerated in the MDOC. The form indicated that Plaintiff had a hit out on him and that enemies had sought him out at three MDOC facilities in the past. The form also stated that Plaintiff was in a level five facility because he had been chased from a level four chow hall by knife toting prisoners and was later found in a level two closet with a razorblade pen and protection kite. The form indicated that on November 27, 2004, Plaintiff busted his typewriter in order to return to segregation after staff ignored four protection kites, and that while he was in segregation Plaintiff denied himself all out of cell activities, including medical treatment for symptoms such as pus filled bleeding gums, hard stools and occasionally blood in his stool, because staff refused to honor Plaintiff's request not to be escorted past un-handcuffed prisoners. According to the protection form, Plaintiff wrote to Defendants Luetzow and Dostler-Etelamaki on March 2, 2005, complaining that prisoners were plotting to snatch Plaintiff from his segregation cell and kill him, and that on March 3, 2005, Plaintiff was verbally assaulted with snitch innuendos, leading Plaintiff to believe that Defendant Dostler-Etelamaki gave his kite to other prisoners. The form then stated that Plaintiff cut himself 10 times with a razor on March 7, 2005, and only agreed to relinquish the razor to staff after they agreed to speak with Plaintiff in private regarding his protection needs. Plaintiff subsequently spoke with the shift commander, Lieutenant

Yankovich, and when he returned to his cell, Plaintiff discovered that over "four feet worth" of legal papers were missing.

Plaintiff alleges that after he gave the protection form to Defendant Green, Defendant Green returned with one copy of the form, along with a typed note from Defendant Cambell, stating that protection would not be granted because Plaintiff had not provided the identity of his enemies at AMF. Plaintiff responded that Defendant Cambell did not have the authority to make such a determination and that the form had to be forwarded to the Deputy Warden. Defendant Green stated that unit staff were capable of handling protection needs and did not need to involve the Deputy Warden. Defendant Green smiled at Plaintiff and stated that he would not be taking any further action.

On October 5, 2005, Plaintiff prevented the closing of his door slot by blocking it with a blanket. Plaintiff agreed to remove the blanket on the condition that staff place him in segregation pending a protection hearing or misconduct. Staff placed Plaintiff in segregation pending a misconduct, and Plaintiff remained there until April 14, 2006. A copy of the step III grievance response for grievance number AMF-05-10-02679-03b, dated February 22, 2006, which is attached to Plaintiff's complaint, indicates that a protection hearing is not required to classify a prisoner voluntarily to protective segregation. The response states:

> [A] prisoner who requests protection shall be placed immediately in temporary segregation or, if the institution does not have temporary segregation cells, in other suitable housing. A Request for Protective Segregation Agreement (CSJ-465) shall be reviewed with the prisoner and signed by both the prisoner and the reviewing staff member; a copy shall be forwarded immediately to the Deputy Warden for SCC review. If SCC determines that protection is needed, a Notice of Intent to Classify to Segregation (CSJ-447) shall be completed, the waiver for protective segregation signed by the prisoner, and the

prisoner classified to and placed in protective segregation.  If SCC determines that protection is not needed, reasons for this finding shall be documented on the request for protective segregation agreement.

The record is unclear as to whether the grievant requested protection prior to and immediately after his 10-3-05 release from administrative segregation and whether any requests he made were handled in accordance with PD 04.05.120.  However, the record indicates that the grievant has subsequently been reclassified to administrative segregation due to misconduct.  Because he is currently housed in a segregation unit, his protection request is now moot.  It is recommended that appropriate administrative staff take steps to ensure that all staff are aware of the request for protection process set forth in PD 04.05.120, Paragraph U, and that all requests for protection are handled in accordance with that policy.  This grievance issue is considered resolved.

Plaintiff also attaches a copy of a drawing in which he details injuries that he allegedly obtained on April 20, 2006.  However, Plaintiff fails to specify how he received these injuries.  Plaintiff seeks a transfer to protective custody, as well as compensatory and punitive damages.

## II.    Lack of exhaustion of available administrative remedies

Initially, the undersigned notes that Plaintiff has failed to sufficiently allege and show exhaustion of available administrative remedies.  Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought.  *Porter*, 534 U.S. at 516; *Booth*, 532 U.S. at 741.  A district court must enforce the exhaustion requirement sua sponte.

*Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.), *cert. denied*, 525 U.S. 833, 119 S. Ct. 88 (1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available. *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the court may determine what claims, if any, have been exhausted. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir.), *cert. denied*, 531 U.S. 1040, 121 S. Ct. 634 (2000). A prisoner must specifically mention the involved parties in the grievance to make prison officials aware of the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001).

Plaintiff's claims are the type of claims that may be grieved through the three-step prison grievance process. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy and procedure or unsatisfactory conditions of confinement") (effective 4/28/03); ¶ R (may grieve alleged "racial or ethnic discrimination or staff brutality or corruption" directly to Step III) (effective 4/28/03)**.**

The burden to allege and show exhaustion belongs to Plaintiff. *See* 42 U.S.C. § 1997e(a); *Knuckles El*, 215 F.3d at 642; *Brown*, 139 F.3d at 1104. This requirement is "so that the district court may intelligently decide if the issues raised can be decided on the merits." *Knuckles El*, 215 F.3d at 642. Plaintiff attaches copies of the grievance, grievance appeals and responses that he filed regarding the October 3, 2005, denial of his request for protection. However, it does not appear that Plaintiff filed a grievance regarding his April 14, 2006, release to the general population.

- 6 -

Nor does it appear that Plaintiff filed a grievance regarding his April 20, 2006, injuries.  An allegation that remedies have been exhausted is not enough, as a plaintiff must provide the decisions reflecting the administrative disposition of his claims or other evidence showing that he has exhausted his remedies.  *Williams v. McGinnis*, No. 98-1042, 1999 WL 183345, at *1 (6th Cir. March 16, 1999). The Sixth Circuit has found that the district court is not required to hold evidentiary hearings on the issue of exhaustion or "spend a lot of time with each case just trying to find out whether it has jurisdiction to reach the merits."  *See Knuckles El*, 215 F.3d at 642. Accordingly, the undersigned finds that Plaintiff has failed to demonstrate exhaustion of available administrative remedies.

It is not clear whether Plaintiff may still grieve his claims.  Under the policy of the prison, complaints must be resolved expeditiously, and complaints may be rejected as untimely.  *See* Policy Directive 03.02.130, ¶¶ G-3, T, V.  The Sixth Circuit held that an inmate cannot claim that "he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) (citing *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir.), *cert. denied*, 522 U.S. 906 (1997).  In addition, the United States Supreme Court has recently held that Prisoners must comply with applicable procedural rules, including deadlines, when exhausting administrative remedies as a precondition to bring an action in federal court.  *Woodford, et al. v. Ngo*, S. Ct. No. 05-416, Slip Op. p. 21 (Mar. 22, 2006).

Because the exhaustion requirement is no longer discretionary, but is mandatory, the Court does not have the discretion to provide a continuance in the absence of exhaustion.  *See Wright*, 111 F.3d at 417.  Rather, dismissal of this action without prejudice is appropriate when a

prisoner has failed to show that he exhausted available administrative remedies. *See Freeman*, 196 F.3d at 645; *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Bradford v. Moore*, No. 97-1909, 1998 WL 476206, at \*1 (6th Cir. Aug. 3, 1998). Dismissal for failing to exhaust available administrative remedies does not relieve a plaintiff from payment of the civil action filing fee. *Omar v. Lesza*, No. 97 C 5817, 1997 WL 534361, at \*1 (N.D. Ill. Aug. 26, 1997). Accordingly, the Court may dismiss Plaintiff's action without prejudice.

However, the undersigned notes that court need not first require exhaustion of available administrative remedies when the claim may be dismissed because it is, "on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(2); *Brown v. Toombs*, 139 F.3d 1102, 1103 (6th Cir.), *cert. denied*, 525 U.S. 833 (1998). Because Plaintiff's complaint fails to state a claim upon which relief can be granted, the undersigned recommends that the Court dismiss his action without first requiring Plaintiff to exhaust any available administrative remedies.

III.    Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of

substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants violated his rights under the Eighth Amendment.  In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with "deliberate indifference" to a substantial risk that the defendant would cause prisoners serious harm.  *Farmer v. Brennan*, 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996); *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 79 (6th Cir.1995).  *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). In order to succeed on this claim, Plaintiff must show that Defendants were subjectively aware of the risk and disregarded that risk by failing to take reasonable measures to abate it.  *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).

As noted above, Plaintiff claims that he was in danger and that Defendants were deliberately indifferent to that danger by refusing to give him a protection hearing after he requested one on October 3 and 4 of 2005.  Plaintiff states that he was required to commit a misconduct in order to be placed in segregation for his own protection.  Plaintiff remained in administrative segregation until April of 2006.  Plaintiff claims that after he was released from segregation, he suffered injuries, which he documented in a drawing depicting his condition on April 20, 2006.

However, in Plaintiff's motion to compel (docket #8) filed on June 16, 2006, he includes a copy of a step I grievance regarding injuries Plaintiff received on April 19, 2006, as the result of an assault by staff.  Plaintiff makes no other mention of injuries or assaults.  Therefore, it does not appear that Plaintiff ever suffered any injuries as a result of Defendants' alleged failure to protect him.  Consequently, because Plaintiff fails to allege or show that he suffered any physical injury, his Eighth Amendment claim for damages is barred by 42 U.S.C. § 1997e(e), which precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury."  *See Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir.1999); *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir.1999); *Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir.1997); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997); *Oliver v. Sundquist*, No. 00-6372, 2001 WL 669994, at *1 (6th Cir. June 7, 2001); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000).

In addition, according to Plaintiff's "affidavit in support Plaintiff's motion for temporary restraining order," which Plaintiff filed on May 15, 2006 (docket #4), Plaintiff began asking staff to be released to general population in February of 2006.  However, Resident Unit Manager Jondreau said that Plaintiff would not be released because he only wanted protection, and AMF Segregation could safely meet Plaintiff's protection needs.  On April 14, 2006, Resident Unit Manager Jondreau called Plaintiff into his office and said that Plaintiff might be considered for release from administrative segregation if he agreed not to request protection.  Plaintiff agreed and was released.  Plaintiff attests that on April 18, 2006, he attempted to "catch a misconduct" in order to return to segregation.  Plaintiff was eventually successful and was placed in a segregation cell on

- 10 -

April 19, 2006, after being assaulted by staff.  Because Plaintiff currently resides in segregation, his request for injunctive relief, that he be transferred to a protective custody facility, is moot.

### Recommended Disposition

Having conducted the review now required by the Prison Litigation Reform Act, I recommend that Plaintiff's complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Should this report and recommendation be adopted, the dismissal of this action will count as a strike for purposes of 28 U.S.C. § 1915(g).

I further recommend that the Court find no good-faith basis for appeal within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).

Finally, it is recommended that Plaintiff's motion for temporary restraining order and/or preliminary injunction (docket #2) and motion to compel (docket #8) be denied as moot.


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   August 8, 2006


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).